UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>ROCKLIN OF CALIFORNIA LLC, et al.,<br><br>Defendants. | Case No.18-cv-06836-VKD<br><br>**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 17 |

In this disability rights action, plaintiff Scott Johnson sues for alleged accessibility violations he says he encountered at a Scandinavian Designs furniture store ("Store") in San Jose, California. He asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, *et seq.* and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53. Mr. Johnson seeks injunctive relief, as well as statutory damages, attorneys' fees and costs.

Defendants Rocklin of California LLC ("Rocklin") and Concept 2000, Inc. ("Concept 2000") failed to answer the complaint or to otherwise appear in this matter. At Mr. Johnson's request, the Clerk of the Court entered defendants' default on March 18, 2019. Dkt. Nos. 12, 13.

Mr. Johnson now moves for default judgment. Although the docket indicates that Mr. Johnson served his motion papers by mailing them to defendants at their business address (Dkt. No. 17-10), defendants have not opposed or otherwise responded to the motion, and briefing on the matter is closed. Civ. L.R. 7-3(a). The Court held a hearing on the matter on June 18, 2019. Mr. Johnson appeared; defendants did not.

Mr. Johnson has consented to proceed before a magistrate judge. 28 U.S.C. § 636(c); Fed.

1  R. Civ. P. 73.  However, as defendants have not appeared and are in default, the magistrate judge
2  does not have the consent of all parties.  Accordingly, this Court directs the Clerk of the Court to
3  reassign this action to a district judge, with the following report and recommendation that Mr.
4  Johnson's motion for default judgment be granted in part and denied in part.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

According to his complaint, Mr. Johnson is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments.  He says he uses a wheelchair for mobility and has a specially equipped van with a ramp that enables him to move in and out of his vehicle.  Dkt. No. 1 ¶ 1; Dkt. No. 17-5 ¶¶ 2-3.  Defendant Concept 2000 is the alleged owner of the Store.  Defendant Rocklin reportedly owns the real property where the Store is located.  Dkt. No. 1 ¶¶ 2-7; Dkt. No. 17-4 ¶¶ 3-4; Dkt. No. 17-8.

Mr. Johnson claims that during two visits in 2018, barriers in the Store's parking lot prevented him from enjoying full and equal access to the facilities at the Store.  Dkt. No. 1 ¶¶ 12, 15-19; Dkt. No. 17-5 ¶¶ 5-8; Dkt. No. 17-7 at ECF 1.  Specifically, Mr. Johnson avers that during his July 13, 2018 visit, he found two parking spaces, with pole-mounted signs, that were supposed to be reserved for persons with disabilities.  One space was located in front of the Store; the other was located at the side of the Store.  However, the paint marking the spaces was faded. Additionally, the parking space in front of the Store did not have any access aisle; instead, the space was flanked by another space where any vehicle could park.  Dkt. No. 1 ¶ 15-16; Dkt. No. 17-5 ¶ 6.  According to Mr. Johnson, this configuration would not permit him to deploy his van ramp if another driver were to lawfully park in the adjacent space.  Dkt. No. 17-5 ¶ 4.  The other parking space at the side of the Store had an access aisle; however, a built-up curb ramp extended into that aisle rendering it insufficiently level.  *Id*. ¶ 6.  Because this access aisle was on the driver's side of the stall, Mr. Johnson says that he would have been forced to back into the stall and deploy his van ramp on top of the curb ramp, which he claims would be very dangerous for him to do.  *Id*.

During his October 4, 2018 visit, Mr. Johnson says that the Store had attempted to address

1    his concerns about the lack of accessible parking and painted parking spaces for persons with
2    disabilities by painting new parking spaces. Dkt. No. 1 ¶ 17; Dkt. No. 17-5 ¶ 7. However, Mr.
3    Johnson claims that, even after these efforts, the Store had only one fully accessible parking space
4    instead of the two the law requires. Dkt. No. 1 ¶ 18. On this particular point, Mr. Johnson's
5    complaint and the declaration he submitted in support of the present motion are not consistent.
6    Mr. Johnson's complaint seems to take issue only with the designated parking space at the side of
7    the Store, which is alleged to have a built-up curb ramp that extends into the access aisle, resulting
8    in excessive slopes. *Id*. ¶¶ 18-20. Mr. Johnson's declaration submitted in support of the present
9    motion reiterates that the curb ramp presents an ongoing issue with respect to the parking space at
10   the side of the Store. Dkt. No. 17-5 ¶ 7. His declaration also states that the parking space at the
11   front of the Store "is not complaint [sic]" because it lacks "NO PARKING" signage warning
12   people not to park in that area.[1] *Id*. However, Mr. Johnson's counsel confirmed at oral argument
13   that, as currently designed, the Store's parking lot contains only one non-compliant space and that
14   the focus of the present motion is the parking space with the alleged slope issues located at the
15   side of the Store.

16   Mr. Johnson alleges that the barriers he encountered "caused him difficulty, discomfort,
17   and embarrassment." Dkt. No. 1 ¶ 23. While he says he would like to return to patronize the
18   Store and to assess the premises for compliance with accessibility requirements, Mr. Johnson
19   claims that he "is deterred from visiting until the defendants remove the barriers." *Id*. ¶ 24; Dkt.
20   No. 17-5 ¶¶ 9-10.

21   **II.    LEGAL STANDARD**

22   Default may be entered against a party who fails to plead or otherwise defend an action.
23   Fed. R. Civ. P. 55(a). After entry of default, a court may, in its discretion, enter default judgment.
24   Fed. R. Civ. P. 55(b)(2);[2] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding

---

[1] Photos taken by Mr. Kadric during his November 5, 2018 inspection, however, indicate that the space in front of the Store is flanked by two hatch-marked areas, one of which is marked "NO PARKING," and that the parking space has a pole-mounted sign noting "PARKING ONLY VAN ACCESSIBLE" and "MINIMUM FINE $250." Dkt. No. 17-6 ¶ 6; Dkt. No. 17-7 at ECF 3.

[2] "A default judgment may be entered against a minor or incompetent person only if represented

3

whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Federal question jurisdiction is based on Mr. Johnson's ADA claim for relief. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over his Unruh Act claim pursuant to 28 U.S.C. § 1367. This Court is also satisfied that personal jurisdiction exists over both defendants. Mr. Johnson's complaint and public records submitted with the present motion indicate that Concept 2000 is a California corporation that owns the Store, and that defendant Rocklin is a Nevada corporation that owns the real property in San Jose, California on which the Store is located. Dkt. No. 1 ¶¶ 2-7; Dkt. No. 17-4 ¶¶ 3-4; Dkt. 17-8. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotations and citation omitted) (alteration in original); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying

---

by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). There are no such issues presented here.

4

controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.").

**B.     Service of Process**

Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4 provides that service on a corporation may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

This Court concludes that both defendants properly were served. The docket indicates that Rocklin and Concept 2000 were each served via personal service upon their respective agents for service of process (Dkt. Nos. 8, 9, 17-8). *See* Cal. C.C.P. § 416.10(a) (providing that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process").

**C.     *Eitel* Factors**

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default judgment.

**1.     The possibility of prejudice to Mr. Johnson**

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse against the defendants. That is sufficient to satisfy this factor. *See, e.g., Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (finding that the plaintiff would be prejudiced if default judgment were not entered because she "would have no other means of recourse against Defendants for the damages caused by their conduct.").

### 2. The merits of Mr. Johnson's claims and the sufficiency of the complaint

Pursuant to the second and third *Eitel* factors, this Court concludes that the complaint alleges meritorious substantive claims for relief.

#### a. ADA Title III, 42 U.S.C. § 12181, *et seq*.

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

##### i. Mr. Johnson's Article III Standing

Turning first to Mr. Johnson's Article III standing to pursue his ADA claim: To establish Article III standing to bring an ADA claim, Mr. Johnson must demonstrate that he suffered an injury in fact, that the injury is fairly traceable to defendants' challenged conduct, and that the injury can be redressed by a favorable decision. *Ridola*, 2018 WL 2287668 at *5 (citing *Hubbard v. Rite Aid Corp*., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson's complaint alleges that he is disabled within the meaning of the ADA; that he was denied equal access at the Store's facilities; and that he personally encountered barriers to full and equal access there. Dkt. No. 1 ¶¶ 1, 12-22. As discussed above, Mr. Johnson claims that on both visits to the Store, he encountered access barriers in the parking lot, including the lack of an access aisle for one parking space, as well as a built-up curb ramp that extended into the access aisle for the second parking space, causing excessive slopes. Dkt. No. 1 ¶¶ 12-20; Dkt. No. 17-5 ¶¶ 5-7. The complaint alleges that defendants failed to maintain the facilities in useable and working condition so as to provide access to disabled persons. Dkt. No. 1 ¶¶ 21, 25. Moreover, Mr. Johnson claims that he is deterred from returning to the Store because of the alleged barriers. Dkt. No. 1 ¶¶ 24, 27; Dkt. No. 17-5 ¶¶ 9, 10. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed,

'[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.") (quoting *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

Mr. Johnson's factual allegations are accepted as true by virtue of defendants' default, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries. Accordingly, this Court finds that Mr. Johnson has Article III standing to sue under the ADA.

ii. **ADA Claim Elements**

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) defendants are private entities that own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by defendants because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL 2287668 at *5 (citations omitted).

Because the complaint's well-pled factual allegations are deemed true, Mr. Johnson has established that he is disabled within the meaning of the ADA. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking or performing manual tasks, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). As discussed above, Mr. Johnson says he is a C-5 quadriplegic, with significant manual dexterity impairments. Dkt. No. 1 ¶ 1; Dkt. No. 17-5 ¶ 2. Mr. Johnson asserts that defendant Rocklin owns the subject real property and that defendant Concept 2000 owns the Store (Dkt. No. 1 ¶¶ 5-7; Dkt. No. 17-8), which is a place of public accommodation. *See* 42 U.S.C. § 12181(7)(E) (listing "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment" as a "public accommodation"). Mr. Johnson also alleges that during his visits to the Store, he personally encountered access barriers with respect to parking spaces. Dkt. No. 1 ¶¶ 12-22; Dkt. No. 17-5

7

¶¶ 6-7.

Mr. Johnson contends that the alleged barriers violate the ADA Accessibility Guidelines ("ADAAG"), 2010 Standards. The ADAAG, found in the ADA's implementing regulations at 28 C.F.R. Part 36, provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945. "Accordingly, a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018 WL 2287668 at *7.

Mr. Johnson argues that the Store's failure to provide at least two accessible parking spaces, of the 48 total spaces available to the public, violates the ADAAG 2010 Standards. Those Standards provide that facilities (such as the Store) with 26 to 50 parking spaces must provide a minimum of two accessible parking spaces. 2010 Standards § 208.2. At least one in every six accessible parking spaces shall be a van parking space. *Id*. § 208.2.4. Additionally, the 2010 Standards mandate that the ground surface for access aisles must be at the same level as the parking spaces they serve, and changes in level are not permitted. *Id*. § 502.4. Mr. Johnson correctly notes that the Advisory portion of 2010 Standards § 502.4 states that "[b]uilt-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48."

Mr. Johnson has sufficiently alleged that during his visits, he encountered architectural barriers prohibited under the ADA. During his July 2018 visit, Mr. Johnson claims that while there were two designated parking spaces for disabled persons, neither one was accessible. The parking space at the front of the Store allegedly did not have an access aisle (or at least not one that was clearly or properly marked). While the parking space at the side of the Store had an access aisle, Mr. Johnson says that the built-up curb ramp extended into that access aisle. Dkt. No. 17-5 ¶ 6; Dkt. No. 17-7 at ECF 1.

On his October 4, 2018 visit, Mr. Johnson claims that the parking space at the side of the Store still had a built-up curb ramp extending into the access aisle. Dkt. No. 1 ¶¶ 18-19, Dkt. No. 17-5 ¶ 7. Hedal Kadric, Mr. Johnson's investigator, states that he personally visited the premises on November 5, 2018 and found that the curb ramp had a slope of 13.26%. Dkt. No. 17-6 ¶ 5;

8

Northern District of California

1 Dkt. No. 17-7 at ECF 2-5. The complaint alleges an ongoing accessibility issue with respect to the
2 curb ramp and excessive slope in the parking space at the side of the Store. Dkt. No. 1 ¶¶ 19-20.
3 As discussed above, Mr. Johnson confirmed at oral argument that the only space that remains at
4 issue in the present motion is the one located at the side of the Store. Accordingly, Mr. Johnson
5 has demonstrated the presence of existing architectural barriers that violate the ADA.

6 As for the "readily achievable" element of his ADA claim, citing *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007), Mr. Johnson argues that he need not show that barrier removal is readily achievable because defendants bear the burden of pleading and proving, as an affirmative defense, that removal of the barriers in question is not readily achievable. That affirmative defense has been waived, Mr. Johnson argues, because defendants have not appeared in this matter.

12 Although the Ninth Circuit has yet to decide who bears the burden of proving that removal of an architectural barrier is readily achievable, *see Johnson v. Altamira Corp.*, No. 16-cv-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal., Mar. 27, 2017), a number of federal courts, including within the Ninth Circuit, follow the burden-shifting framework articulated by the Tenth Circuit in *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001). *See Vogel*, 992 F. Supp. 2d at 1010-11; *see also Ridola*, 2018 WL 2287668, at *10. Under the *Colorado Cross* burden-shifting analysis, the plaintiff bears the initial burden of production to show that a suggested method for removing a barrier is readily achievable, and the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. *See Vogel*, 992 F. Supp. 2d at 1010 (citing *Colorado Cross*, 264 F.3d at 1006). In the historic facilities context, the Ninth Circuit declined to adopt *Colorado Cross*'s burden-shifting framework and instead placed the burden of production squarely upon the defendant as "the party with the best access to information regarding the historical significance of the building." *Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008). Although limited to the historic facilities context, *Foley Estates* recognized that Congress relies on private individuals to enforce the ADA and also noted the general principle espoused by the *Colorado Cross*'s dissent: "'[i]f plaintiffs must all but present the court with a pre-approved construction

9

contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim under 42 U.S.C. § 12182(b)(2)(A)(iv).'" *Id*. at 1048-49 (quoting *Colorado Cross*, 264 F.3d at 1011). "We need not require an ADA plaintiff to undertake such heroic measures." *Id*. at 1049.

Regardless of who bears the burden of proof, *Foley Estates*' general observations, as well as cases applying the *Colorado Cross* burden-shifting framework, suggest that the plaintiff's initial burden, at least in the default judgment context, is not onerous. *See, e.g., Johnson v. Hall*, No. 2:11-cv-2817-GEB-JFM, 2012 WL 1604715, at *3 (E.D. Cal., May 7, 2012) (concluding that the plaintiff met his burden where the complaint's allegation that the barriers "are readily removable" was deemed true on default and where he sought injunctive relief to remove barriers if it was readily achievable to do so); *Johnson v. Beahm*, No. 2:11-cv-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal., Nov. 8, 2011) (same).

Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and "are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove." Dkt. No. 1 ¶ 26. Additionally, the complaint alleges that "there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." *Id*. Federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(18), and courts have observed that the listed items are "examples of readily achievable steps to remove barriers . . .." *Altimira Corp.*, 2017 WL 1383469, at *3; *see also Vogel*, 992 F. Supp. 2d at 1011 (concluding that the plaintiff met his initial burden of showing that the barrier removal was readily achievable where he alleged that the defendant had the financial resources to remove the barriers without difficulty, but refused to do so, and where many of the barriers in question were among those listed in 28 C.F.R. § 36.304(b)). Moreover, at the default judgment stage, courts have found allegations similar to Mr. Johnson's allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See, e.g., Altimira Corp.*, 2017 WL 1383469

at *3 (concluding that the plaintiff's allegations, including those concerning accessible parking spaces, fell within the scope of readily achievable steps set forth in 28 C.F.R. § 36.304).

This Court finds that, in this default proceeding, Mr. Johnson has satisfied his burden that removal of the barriers at issue is readily achievable. Because defendants defaulted and have not defended this action, they have failed to meet their burden to show that removal of the identified barriers is not readily achievable.

### b. Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *MJ Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Johnson has an ADA claim based on the Store's lack of accessible parking spaces, he also has an Unruh Act claim based on those barriers.

### 3. The amount of money at stake

This *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal., Aug. 20, 2018). Mr. Johnson seeks statutory damages under the Unruh Act and an award of attorney's fees and costs. For the reasons discussed more fully below, the amount of damages requested is not substantial and is proportional to the conduct alleged. The amount of attorney's fees claimed, while subject to reduction by the Court, is also not substantial.

### 4. The possibility of a dispute concerning material facts and whether defendants' default was due to excusable neglect

Under the fourth and fifth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether defendants' failure to respond was the result of excusable neglect. *Love*, 2018 WL 4471073 at *5; *Ridola*, 2018 WL 2287668 at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a possibility of a dispute as to material facts. Moreover, there is no indication that defendants' default was due to excusable neglect. The record demonstrates that Mr. Johnson served defendants with notice of this lawsuit, as well as with copies of his initial request for the entry of

1    their default and the present motion for default judgment. Dkt. Nos. 8-11, 17. Defendants have
2    never appeared or responded, suggesting that they have chosen not to present a defense in this
3    matter. These factors weigh in favor of default judgment.

### 5. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, defendants' failure to participate in this litigation makes that impossible. *See Ridola*, 2018 WL 2287668 at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment therefore is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co, Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

## D. Requested Relief

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, as well as statutory damages under the Unruh Act, and attorneys' fees and costs.

### 1. Injunctive Relief

Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *MJ Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(c). "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Love*, 2018 WL 4471073 at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Apps. 669, 670 (9th Cir. 2011)).

Here, Mr. Johnson concedes that the parking space at the front of the Store is compliant

and that the only accessibility violations at issue in the present motion are those concerning the space located at the side of the Store. For the reasons discussed above, Mr. Johnson has shown that he is entitled to injunctive relief with respect to the space at the side of the Store. The Court recommends that his request for injunctive relief be granted as to this parking space but denied as to the other parking space at the front of the Store.

### 2. Statutory Damages

"Monetary damages are not available in private suits under Title III of the ADA. *MJ Cable, Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002)). However, the Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . .." *Ridola*, 2018 WL 2287668 at *15 (citing Cal. Civ. Code § 52(a)). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731. He requests a single statutory minimum award of $4,000 with respect to his two visits to the Store. This Court finds that Mr. Johnson has established his entitlement to an award of $4,000 in statutory damages.

### 3. Attorney's Fees and Costs

Mr. Johnson requests $6,556.60 in attorneys' fees and costs.

The ADA gives courts the discretion to award attorney's fees, including litigation expenses and costs, to prevailing parties. *MJ Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Similarly, the Unruh Act provides for an award of fees "as may be determined by the court." Cal. Civ. Code §§ 52(b)(3), 52.1(c).

Whether calculating attorney's fees under California or federal law, courts follow the lodestar approach. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), abrogated on other grounds by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

### a. Reasonable Hourly Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 896 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

Mr. Johnson seeks fees based on the hourly rates of the following five attorneys: Mark Potter ($650/hour), Russell Handy ($650/hour), Chris Carson ($410/hour), Amanda Seabock ($410/hour) and Dennis Price ($410/hour). Dkt. No. 17-4. To support the reasonableness of the identified hourly rates, Mr. Johnson relies on a declaration from Mr. Price, one of the attorneys for whom fees are sought. Mr. Price's declaration includes a description of the attorneys' qualifications and experience,[3] a billing statement for work performed in this case, a chart summarizing selected rates awarded by courts in this district between 2011 and 2018, and impermissible legal argument about why the Court should award the rates claimed in this case (which the Court will not consider).[4] Mr. Price's declaration concludes with the following

---

[3] As noted below, however, Mr. Price's declaration does not include any information about Chris Carson.

[4] A declaration may not contain legal argument. Civ. L.R. 7-5(b) ("An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. . . . An affidavit or declaration not in compliance with this rule may be stricken in whole or in part."). The Court strikes and does not consider paragraphs 13 and 16 of Mr. Price's declaration. *See* Dkt. No. 17-4.

14

assertion:

> Because the nature of my practice is wholly dependent on billing at a market rate, I have extensive experience with respect to what attorneys specializing in disability law and civil rights bill for civil litigation and what courts are routinely awarding and can attest that the rates billed by the Center for Disability Access for its attorneys are well within market rates.

Dkt. No. 17-4 ¶ 18. Mr. Price does not actually identify the rates at which attorneys specializing in disability and other civil rights matters bill for civil litigation, even though he asserts that he has "extensive experience" with respect to that information, and even though he says his practice depends on "billing at a market rate."

The difficulty presented by Mr. Johnson's request for attorneys' fees is that it contains scant information about the prevailing market rate for similar work performed by attorneys of comparable skill, experience, and reputation in this community. Mr. Johnson has not submitted declarations from other attorneys attesting to the reasonableness of the claimed rates. Instead, the primary "market" on which he relies to support the claimed hourly rates is comprised of the decisions of the courts in this district tasked with deciding fees motions like his. Here, Mr. Johnson principally relies on *Love v. Rivendell II, Ltd., et al.*, Case No. 18-cv-03907-JST (EDL) (N.D. Cal., Mar. 11, 2019), decided by another court of this district, which approved the claimed rates for these same attorneys. *See Rivendell*, Dkt. No. 25 (report and recommendation); *see also* Dkt. No. 30 (order adopting report and recommendation). In *Rivendell*, Mr. Johnson asked for fees as part of a motion for default judgment, and as with his claims here, Mr. Johnson alleged that the defendants failed to provide accessible parking spaces for disabled persons. Mr. Johnson's application for fees in *Rivendell* was not opposed by the defaulting defendant, and as another court in this district recently observed, the *Rivendell* decision relied on cases that concerned work that was substantially different than the work performed in the present action. *See Johnson v. AutoZone, Inc.*, No. 17-cv-02941-PJH, 2019 WL 2288111, at *6 n.4 (N.D. Cal., May 29, 2019). Specifically, *Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950 (N.D. Cal., Mar. 22, 2016), was a complex class action matter involving 54 hotels spread among multiple states. In *Elder v. Nat'l Conference of Bar*

*Examiners*, the court observed that the case set "new precedent" that caused the California State Bar to "change a policy which impacts potentially hundreds of individuals each year across California." No. 11-cv-00199-SI, 2011 WL 4079623, at *4 (N.D. Cal., September 12, 2011). And in *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268 (N.D. Cal. 2014), the opposing party agreed that counsel's requested rate of $550/hour was reasonable for an attorney with over two decades of litigation experience and that a rate of $645/hour was reasonable for an attorney with over forty-five years of experience.

Mr. Price's declaration cites to those same cases, as well as several others. Dkt. No. 17-4 ¶ 14. With the exception of *Martin v. Diva Hospitality Group, Inc.*, No. 16-cv-04103-EDL, 2018 WL 6710705 (N.D. Cal., Dec. 7, 2018)[5], all of these cases were decided at least two years before Mr. Johnson's counsel performed the services at issue here. The Court is required to consider cases that were decided relatively contemporaneously to time the work was performed. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (noting that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bell v. Clackamas County*, 858 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion for the district court to apply rates in effect more than two years before the work was performed). Mr. Johnson's attorneys performed work in this case from October 2018 through May 2019.[6] In the absence of other evidence of what attorneys of comparable skill, experience, and reputation were billing for similar work performed during the relevant time period in the relevant market, the Court considers recent decisions involving ADA disputes like this one. *See Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) ("In a case in which a defendant fails to appear or otherwise defend itself . . . the burden of scrutinizing an attorney's fee request—like other burdens—necessarily shifts to the court.").

Although Mr. Price avers that "[t]he Northern District has already granted plaintiff's

---

[5] *Diva Hospitality* is discussed in more detail below.

[6] Mr. Johnson has not requested fees for the time his counsel, Mr. Price, spent appearing by phone at the June 18, 2019 motion hearing.

16

requested rates on a number of occasions" (Dkt. No. 17-4 ¶ 14), other than *Rivendell*, Mr. Johnson has not cited, and this Court has not found, other decisions in this district awarding the requested hourly rates to his counsel. Messrs. Handy and Potter, who have been practicing disability law for 20 years and 25 years, respectively, each seek approval of a $650 hourly rate. As noted in *AutoZone*, however, multiple courts in this district recently have awarded fees based on a $425 hourly rate for Messrs. Handy and Potter. *See AutoZone, Inc.*, 2019 WL 2288111, at *6 (citing cases); *see also Gonzalez v. Machado*, No. 17-cv-02203-LB, 2019 WL 3017647 (N.D. Cal., July 10, 2019); *Johnson v. Express Auto Clinic, Inc.*, No. 18-cv-00464-KAW, 2019 WL 2996431 (N.D. Cal., July 9, 2019) (same); *Johnson v. VN Alliance LLC*, No. 18-cv-01372-BLF, 2019 WL 2515749 (N.D. Cal., June 18, 2019) (same); *Johnson v. RK Investment Properties, Inc.*, No. 18-cv-01132-KAW, 2019 WL 1575206 (N.D. Cal., Mar. 18, 2019) (same).

Compared with fees awarded to other attorneys with similar experience, Messrs. Handy and Potter's request for a $650 rate appears high. For attorneys with approximately 20 or more years of experience, courts have generally approved rates ranging from $350 to $495 in disability cases. *See, e.g., Castillo-Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal., Apr. 10, 2019) (approving, on a motion for default judgment, a $350 hourly rate for an attorney with over 20 years of experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal., Feb. 21, 2019) (approving a $350 rate for an attorney with 20 years of litigation experience, noting that the requested rate was unopposed by defendant and in line with rates approved in the Northern District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal., Nov. 14, 2018) (approving a $495 rate for an attorney with 24 years of experience in civil rights litigation, including 12 years devoted to disability law and a $475 rate for an attorney with over 17 years of litigation experience and more than 8 years of experience in disability law).

Mr. Johnson points out that in *Martin v. Diva Hospitality Group, Inc.,* No. 16-cv-04103-EDL, 2018 WL 6710705 (N.D. Cal., Dec. 7, 2018), the court approved rates of at least $700/hour. In that case, the court approved a rate of $700 for an attorney with 28 years of experience as a trial lawyer, with 10 years devoted exclusively to disability law; a $700 rate for an attorney who had

17

been practicing for over 27 years, including 25 years of experience in disability matters; and a rate of $795 for an attorney who had been practicing for 49 years, with 43 years of experience in disability law. *Id.* at *2. More recently, however, after considering a number of decisions issued in this district over the years, another court in this district has noted that a rate over $700/hour is the exception, and not the norm, for disability cases. *See Chapman v. NJ Properties, Inc.*, No. 5:16-cv-02893-EJD, 2019 WL 3718585, at *4 (N.D. Cal., Aug. 7, 2019) (declining to award fees at $750/hour for an attorney with over 40 years of experience, including 25 years in disability access litigation, who had previously been awarded fees at $500/hour, and awarding fees at $600/hour instead to account for inflation).

As for Mr. Price and Ms. Seabock,[7] Mr. Price avers that they both graduated from law school in 2011. Dkt. No. 17-4 ¶¶ 10-11. They each seek fees at $410/hour. *Id*. Other than *Rivendell*, Mr. Johnson has not cited a case from this district awarding fees at their requested rates. Instead, it appears that courts have approved rates ranging from $300/hour, *see, e.g., Gonzalez*, 2019 WL 3017647 at *4; *AutoZone, Inc.*, 2019 WL 2288111 at *7, up to $350/hour, *see, e.g., NJ Properties, Inc.*, at *4; *Express Auto Clinic, Inc.*, 2019 WL 2996431 at *8; *Griffin*, 2018 WL 4471073 at *8. The Court's research indicates that the higher $350 rate is in line with fees awarded to other attorneys with comparable or greater experience. *See, e.g., Che v. Lo*, No. 18-cv-00402-CRB, 2019 WL 2579205, at *2 (N.D. Cal., June 24, 2019) (on a motion for default judgment, approving a rate of $400/hour for an attorney with 10 years experience, including 6 to 8 years in disability matters); *Ridola*, 2018 WL 2287668 at *16, Case No. 5:16-cv-02246-BLF, Dkt. No. 58-8, Declaration of Irene Karbelashvili ¶¶ 3, 6 (approving a rate of $325/hour for an attorney with 12 years of experience, including 6 years focused on disability access law).

The present matter is a relatively simple one, involving straight-forward application of the

---

[7] In his supporting declaration, Mr. Price failed to provide any information regarding the background and experience of attorney Chris Carson. Dkt. No. 17-4. The failure to provide such information precludes an award of fees for that attorney. *See AutoZone*, 2019 WL 2288111 at *6 (concluding that Mr. Johnson failed to meet his burden to justify the billing rate for an attorney where he provided no information regarding that attorney's qualifications). This Court recommends that fees for work performed by Ms. Carson be disallowed. *See Griffin*, 2018 WL 4471073 at *8; *see also* Dkt. No. 17-6 at 10.

18

law, and does not present novel or difficult issues requiring a high level of skill or specialization. For the reasons discussed above, this Court is not persuaded that the rates awarded in *Rivendell* are appropriate here. Nor has Mr. Johnson demonstrated that rates approaching the exceptional rates awarded in *Diva Hospitality* are warranted. While Mr. Price's declaration indicates that the attorneys at issue have considerable experience, the Court also recognizes that "[t]he market rate for legal services . . . does not necessarily rise in direct relation to an attorney's skill and experience." *NJ Properties, Inc.*, 2019 WL 3718585 at *4.

This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). In view of the broad range of rates approved for more senior attorneys practicing in this field, and in the absence of declarations from other attorneys of comparable skill, experience and reputation, this Court recommends that fees be awarded for Messrs. Potter and Handy at a rate of $475/hour. Further recognizing that decisions pertaining to the same attorneys in question are particularly salient, *United Steelworkers*, 896 F.2d at 407, this Court recommends that fees be awarded for Mr. Price and Ms. Seabock at $350/hour.

### b. Hours Reasonably Expended

Having reviewed the timesheets submitted by Mr. Johnson's counsel (Dkt. No. 17-4 at ECF 12), and discounting 0.9 hours for Ms. Carson's services, this Court finds the 9.3 hours incurred are reasonable.

### c. Lodestar Amount

Multiplying the reasonable hourly rates and the hours reasonably expended, yields a lodestar amount of $4,105.00 as reflected in the following table:

| Attorney | Rate | Hours | Total |
| --- | --- | --- | --- |
| Mark Potter | $475 | 4.2 | $1,995.00 |
| Russell Handy | $475 | 2.6 | $1,235.00 |
| Dennis Price | $350 | 1.0 | $350.00 |
| Amanda Seabock | $350 | 1.5 | $525.00 |

| Attorney | Rate | Hours | Total |
|---|---|---|---|
|  |  |  | $4,105.00 |

Moreover, the record substantiates Mr. Johnson's request for the $400 filing fee and $342.60 in other costs. Dkt. Nos. 1, 8, 9, 17-4.[8]

Accordingly, this Court recommends that Mr. Johnson be awarded $4,105.00 in attorney's fees and $742.60 in costs, for a total award of $4,847.60.

## IV. CONCLUSION

Because not all parties have consented to the undersigned's jurisdiction, IT IS ORDERED THAT this case be reassigned to a district judge. For the reasons discussed above, it is RECOMMENDED that:

1. Mr. Johnson's motion for default judgment be granted in part and denied in part.

2. Mr. Johnson be awarded statutory damages in the amount of $4,000.

3. Mr. Johnson be awarded $4,847.60 in attorney's fees and costs.

4. Mr. Johnson be granted an injunction requiring defendants to provide at least two accessible parking spaces, as required by the ADAAG 2010 Standards § 208 and § 502.

Mr. Johnson shall promptly serve each defendant with this Report and Recommendation and file a proof of service with the Court. Any party may serve and file objections to this Report and Recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L.R. 72-3.

**IT IS SO ORDERED.**

Dated: August 16, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[8] Mr. Johnson submitted a billing statement indicating that Mr. Handy reviewed a report by "Investigator Louis." Dkt. No. 17-4 at ECF 12. At oral argument, Mr. Price clarified that Mr. Kadric is the only one who conducted an investigation in this matter. He further confirmed that the reference to Mr. Louis is an error, but the time reported on the billing statement is accurate.

20